WESTERN UNION TELEGRAPH COMPANY v. JOHN T. MOORE.

No. 2806.

1. **Telegraph Company — Notice on Face of Message.**— A dispatch from a sister at Dallas to her brother at Trinity, Texas, relating to another brother, in the words, "Billie is very low; come at once," was sufficient on its face to charge the telegraph company with notice of the relationship in an action for damages for the failure in due diligence to deliver the message.

2. **Same.**—The language employed in the dispatch was reasonably sufficient to put the telegraph company upon inquiry as to the relationship between the parties, and to apprise its officers that the object of the dispatch was to afford the party addressed an opportunity to attend upon his relative in his last sickness, or to be present at his funeral in case of death.

3. **Notice to Agent of the Telegraph Company Prior to the Contract.**— While it seems that notice at place of delivery prior to the sending would not affect the relations by the contract when made, yet an instruction that such notice would charge the defendant company was no ground for reversal when the face of the message is sufficient to give notice.

APPEAL from Walker. Tried below before Hon. N. G. Kittrell.

This is an appeal from a judgment for $2000, rendered against appellant for damages for negligence in failing to deliver a telegram.

The opinion states the case.

*Stewart & Stewart*, for appellant.—The message must show on its face what pecuniary liability would exist against the telegraph company if it failed to transmit or delayed in delivering the message, or this liability must be shown by information given at the time the message was filed, the time when the contract between the parties was made. Tel. Co. v. Brown, 71 Texas, 723; Daniel v. Tel. Co., 61 Texas, 456; Gray Com. by Tel., p. 23; 3 Suth. on Dam., p. 303; Leonard v. Tel. Co., 41 N. Y., 544; 2 Pars. on Con., p. 300; Baldwin v. Tel. Co., 1 Lans., 125; Sedg. on Meas. of Dam., p. 413; Shields v. Tel. Co., Allen's Tel. Cases, 5; Lane v. Tel. Co., Allen's Tel. Cases, 61.

Information given to a telegraph company before parties are on contractual relations is not binding on the company in a suit to recover damages on a contract afterwards made; notice should be confined and

limited to that period of time in which the parties are on contractual relations.   Wooters v. Railway, 54 Texas, 294; Travis v. Duffau, 20 Texas, 49; 1 Pars. on Con., p. 455; Bish. on Con., sec. 40.

*McKinney & Leigh,* for appellee.—This being a suit for damages for delay in the delivery of the message described in the pleadings in this case, if the appellant failed to promptly deliver said message, and at the time of such default had knowledge of the importance of said message from the terms thereof, taken in connection with other information communicated to its agents, it is immaterial, so far as appellant's liability for such default is concerned, when it received such information.   Story's Eq. Jur., secs. 399, 400; Milliken v. Tel. Co., 18 N. E. Rep., 251; Brown v. Tel. Co., 21 Pac. Rep., 988; Tel. Co. v. Adams, 75 Texas, 531.

GAINES, ASSOCIATE JUSTICE.—In November, 1888, the appellee, who then resided at Trinity, Texas, had a sick brother at Dallas.   The brother at the time resided with his sister at the latter place.   Appellee being informed of his brother's illness, wrote to his sister and requested her to give him notice by telegraph of his brother's condition in case he should grow worse.   On the 19th day of the month above named the sister caused a message, signed by her, to be delivered to the appellant's agent at Dallas for transmission to the appellee at Trinity, which was in the following words:  "Billie is very low; come at once."   The message was not promply delivered.   The company's agent at Trinity gave it to a porter to be handed to appellee, but the porter not having found him, returned it to the agent, who deposited it in the postoffice.   The appellee received it on the 20th at about 7 o'clock in the evening.   He immediately went to Dallas and found his brother dead.   He testified that if the message had been promptly delivered he would have reached Dallas in time to have seen his brother alive.

Appellee brought this suit to recover damages for his mental suffering, alleged to have been caused by the default of the telegraph company in not delivering the message promptly, and his consequent failure to arrive at the bedside of his brother in time to be with him in his last moments.

The case appears to have been tried upon the theory that the plaintiff could not recover beyond the amount paid for the transmission of the message unless he should show by extrinsic evidence that the company had notice that the person named in the message was his brother.   It is true that the damages recoverable in an action of this character are limited to such as may reasonably be presumed to have been in the contemplation of the parties at the time the contract is made.   But in the case of the Western Union Telegraph Company v. Adams, 75 Texas, 531, it was held, in effect, that a recovery could be had for mental suffering resulting from a failure to deliver with diligence a telegraphic message

announcing the sickness or death of a relative, provided the language employed in the message was reasonably sufficient to put the company upon inquiry as to the relationship between such person and the party addressed, and to apprise them that its object was to afford the party an opportunity to attend upon his relative in his last sickness, or to be present at the funeral in the case of death. The same principle was affirmed in the case Western Union Telegraph Company v. Feegles, 75 Texas, 537.

We are of opinion that, tested by the rule announced in the cases cited, the message under consideration was sufficient to reasonably apprise the defendant of the consequences to plaintiff of its failure to deliver the message according to contract. The conclusion to be drawn from the language of the message is that a near relationship existed between the person mentioned in the message and the person to whom it was addressed, and that upon its receipt the latter would probably set out at once to attend his relation in his extremity. Such being the case, it would be unreasonable to hold that the company, upon the receipt of the message, should not have contemplated the consequences which were likely to result to plaintiff from a failure to transmit it with diligence and dispatch.

The conclusion that the face of the message was sufficient to give the defendant company notice and to render it liable for damages claimed in this case, if in fact it made default, practically disposes of all the questions raised upon this appeal. The plaintiff testified that some two or three days before the message was delivered at Dallas for transmission he called upon the defendant's agent at Trinity and informed him that he had a brother sick at Dallas, concerning whom he was expecting a message, and requested that it should be sent to the hotel. The court charged, in effect, that if plaintiff did so inform the agent, that this would be sufficient notice to the company of the relationship between the plaintiff and the person mentioned in the message. It may be doubted whether or not this charge was correct. At the time the information is claimed to have been given there were no contractual relations existing between the plaintiff and the company. Can it be held that the company's operator at Trinity was its agent to receive information to affect the damages recoverable for a breach of a contract subsequently to be made at a distant station? However this may be, the appellant was not prejudiced by the charge of the court. The company had notice from the face of the message, and it did not harm the defendant to instruct the jury that notice may have been conveyed in another way, although such charge may not have been correct in point of law.

The defendant requested the court to instruct the jury "that the mere receipt of the message and negligence in delivery would not of itself entitle the plaintiff to recover beyond the amount paid for transmitting the

message." It appears from what has already been said that we think that the request was properly refused.

It is also insisted that the verdict and judgment are contrary to the law, because there was no evidence that the defendant company ever had any notice of the relationship between the plaintiff and the person named in the message. The message itself was notice.

For the same reason the admission of the testimony of the witness Hughes, if error, was harmless. It tended merely to show that the defendant company had notice of the relationship of plaintiff and his brother.

There is no error in the proceedings which demands a reversal of the judgment, and is is therefore affirmed.

*Affirmed.*

Delivered February 7, 1890.