## WESTERN UNION TEL. CO. v. WOOD.

### (Circuit Court of Appeals, Fifth Circuit. May 30, 1893.)

### No. 56.

1. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—RIGHTS OF SENDEE.
    A person to whom a telegraphic message is directed cannot recover against the company for failure to deliver the same, when he is no party to the contract under which it is sent, and when the company is not informed, either by the terms of the message or otherwise, that the contract is for his benefit.

2. SAME—DAMAGES—MENTAL SUFFERING.
    Damages cannot be recovered from a telegraph company for mental suffering resulting from simple negligence in the prompt delivery of a message announcing the dangerous illness of a relative, as such damages are too uncertain, remote, and speculative.

3. FEDERAL COURTS—EFFECT OF STATE DECISIONS.
    The question of the liability of a telegraph company for a failure to promptly deliver a message is one of general law, as to which, in the absence of statutory provisions, the decisions of the state courts are not controlling upon the federal courts. Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914, applied.

In Error to the Circuit Court of the United States for the Northern District of Texas. Reversed.

Statement by PARDEE, Circuit Judge:

The defendant in error brought his action against the plaintiff in error in the district court of Coryell county, state of Texas, and caused summons to be issued, returnable to the January term, 1892, of said court. On the petition of the plaintiff in error the case was duly removed to the circuit court of the United States for the northern district of Texas. After such removal the plaintiff, defendant in error here, filed his first amended original petition, in lieu of all other petitions, upon which the case was tried, and which

reads as follows: "Now comes A. Wood, plaintiff in above-styled cause, complaining of defendant, the Western Union Telegraph Company, and files this, his first amended original petition, in lieu of his original petition herein, and for amendment shows the court that plaintiff resides in Coryell county, Tex.; that the defendant is a body corporate, duly incorporated, and has an office and agent, A. W. Lyman, in Gatesville, Coryell county, Tex.; that said defendant is doing business in the state of Texas, and engaged in transmitting messages for hire; that the said defendant corporation now owns and operates, and did so own and operate, a telegraph line, on the 22d day of October, 1891, from the town of McGregor, in the county of McLennan, state of Texas, to the town of Gatesville, in Coryell county, Tex.; that a brother of the plaintiff, G. W. Wood, resided in Jefferson, Marion county, Tex., at which point the defendant was also operating its said line of telegraph; that about said date the said brother, G. W. Wood, became very ill, and desiring the presence of plaintiff, to comfort him in his last illness, and to settle important business matters, he procured a telegram to be sent to his son, John A. Wood, who resided in McGregor, McLennan county, Tex., requesting the presence of his said son and plaintiff's nephew, and requesting said son to notify plaintiff of his said illness; that on the 22d day of October, 1891, the said John A. Wood, in response to said telegram sent him by his father's request, and as the agent and acting for plaintiff, delivered to the agent of defendant, in McGregor, Tex., a telegram substantially as follows: 'To A. Wood, Gatesville, Texas: Received telegram. Pa is very low. Asked to wire you. John A. Wood.' Plaintiff shows that the person referred to as 'Pa', in said telegram, was the said G. W. Wood, and that said G. W. Wood died at his home in Marion county, Tex., on the —— day of October, 1891; that, at the time said message was delivered to defendant's agent in McGregor, the same was paid for by John A. Wood; that the price paid for said telegram was the amount demanded therefor by the agent of defendant, the same being the usual and customary charges for such services, viz. twenty-five cents; that said message was correctly transmitted and received at the office of defendant in Gatesville, Tex., at twenty-two minutes past eleven o'clock A. M. on the day same was sent; that the plaintiff then, and for a long time prior to the date of said message, resided within the corporate limits of the town of Gatesville; that his residence is within a half mile of defendant's office, and that he and his residence are well known to defendant in Gatesville, and to almost every inhabitant of said town; that plaintiff was in said town, and about home, all said day, and plaintiff shows that notwithstanding he was well known, and had his place of residence in said town, and that defendant knew the importance and contents, and that the words and contents of said message to plaintiff apprised defendant of the importance thereof, and that the importance of same was made known to defendant at McGregor, by the message received by John A. Wood, and by John A. Wood apprising defendant's agent thereof when sending same, the said defendant not only failed to deliver same promptly, but did not deliver same at all; that defendant's failure to deliver said telegram as it had contracted to do was occasioned by its own willful and careless conduct and negligence. Plaintiff shows that had defendant promptly delivered said telegram, or had they delivered same at any time before the hour of 2 o'clock P. M. on the day it was received, plaintiff could and would have started on his way to see his brother by the train which left Gatesville at half past two o'clock, and would have reached his brother's residence, and been with him, two days before his death; that, had said telegram been delivered at any time before said hour on the day after it was received, he could and would have been with his said brother at least one day before his death. Plaintiff further shows that at the time of the death of said G. W. Wood there existed certain business transactions, of great importance and value, between him and plaintiff, which were in an unsettled condition, and by his death the same remains to be settled with his heirs, which will occasion much expense, time, and trouble, to plaintiff's great damage, and which have caused plaintiff distress and worry of mind; that by reason of defendant's willful and careless negligence this plaintiff was deprived of the

privilege of being at the bedside of his brother in his last illness, and comforting him in his death, and from attending his funeral and burial, and by his presence comforting and consoling the bereaved family of his deceased brother, to his great distress and mental agony and pain. And plaintiff says, by reason of all of said allegations herein set out, he has been damaged by said defendant in the full sum of twenty-five hundred dollars actual damages, and on account of defendant's willful conduct and gross negligence, in failing to deliver said telegram, he has been damaged in the further sum of twenty-five hundred dollars as exemplary damages. Wherefore, plaintiff prays for judgment for said sum of twenty-five hundred dollars actual damages, and twenty-five hundred dollars exemplary damages, and costs of suit; and he prays such further relief, both legal and equitable, general and special, as he may be entitled to, and, in duty bound, will ever pray," etc.

To this petition the plaintiff in error, defendant in the court below, filed its first amended original answer in lieu of all other pleas theretofore filed in the case, and therein, as permitted by the practice in the state of Texas, first demurred generally to the plaintiff's petition as insufficient in law, then specially demurred:

(1) That in so far as plaintiff seeks to recover damages for alleged failure to arrange business matters, and for alleged mental suffering and distress, his petition is insufficient, for the reason that such damages are remote, uncertain, and not within contemplation of the parties at the time, and not an element of actual damages in the case, and, under the allegations of the petition, not recoverable at all.

(2) That, in so far as plaintiff seeks a recovery for damages therein for alleged mental distress, said petition is insufficient, in this: that the amount claimed is and was below the jurisdiction of the circuit court.

The defendant also filed a general denial or general traverse of the allegations of the petition, and a special plea setting up the contributory negligence of the plaintiff; also, a special plea setting up the special rules and regulations of the defendant, governing the sending of messages, under which it only undertook to make free delivery, in towns the size of Gatesville, within a radius of half a mile of its office, and averred that the plaintiff did not, at the time said message was received, nor at any time, reside within half a mile of said office, and that no arrangements were made, and no contract entered into, to make delivery of said message outside of said limits, and no extra compensation was ever paid or guarantied for the special delivery of said message outside of said limits.

On the trial of the cause there was a verdict for the plaintiff in the sum of $1,250, and judgment was entered thereon. The plaintiff in error thereupon brought the case to this court for review, assigning errors as follows: "First assignment of error: The court erred in overruling general demurrer of the defendant to plaintiff's petition, because said petition failed to show any cause of action, of which said court could have, hold, and maintain jurisdiction, all of which appears at large by inspection of said petition, and said demurrer thereto. Second assignment of error: The court erred in overruling the first special exception and demurrer of defendant to plaintiff's said petition. Third assignment of error: The court erred in overruling the second special exception of defendant to plaintiff's said petition. Fourth assignment of error: The court erred in overruling the third special exception of defendant to plaintiff's said petition. Fifth assignment of error: The court erred in overruling the fourth special exception of defendant to plaintiff's petition."

George Denegre, Walter D. Denegre, T. L. Bayne, Gaylord B. & Frank B. Clark, Jr., and M. A. Spoonts, (George H. Fearons, Stanley, Spoonts & Meek, and E. R. Meek, on the brief,) for plaintiff in error.

S. B. Hawkins, John Clegg, and E. A. McDonald, (McDowell, Milker & Hawkins, White & Taylor, and Clegg & Thorpe, on the brief,) for defendant in error, among other authorities, cited the

following line of Texas cases, which are referred to, but not cited, in the opinion:

Telegraph Co. v. Nations, 82 Tex. 539, 18 S. W. Rep. 709; Stuart v. Telegraph Co., 66 Tex. 580–586, 18 S. W. Rep. 351; Railway Co. v. Levy, 59 Tex. 542; Telegraph Co. v. Broesche, 72 Tex. 654, 10 S. W. Rep. 734; Telegraph Co. v. Simpson, 73 Tex. 422, 11 S. W. Rep. 385; Telephone Co. v. Grimes, 82 Tex. 89, 17 S. W. Rep. 831; Reliance Lumber Co. v. W. U. Tel. Co., 58 Tex. 394; Loper v. Telegraph Co., 70 Tex. 693, 8 S. W. Rep. 600; Telegraph Co. v. Sheffield, 71 Tex. 576, 10 S. W. Rep. 752; Telegraph Co. v. Adams, 75 Tex. 536, 12 S. W. Rep. 857; Anderson v. Telegraph Co., (Tex. Sup.) 19 S. W. Rep. 285; Martin v. Telegraph Co., (Tex. Civ. App.) 20 S. W. Rep. 861; Telegraph Co. v. Beringer, 84 Tex. 38, 19 S. W. Rep. 336; Telegraph Co. v. Jones, 81 Tex. 271, 16 S. W. Rep. 1006; Telegraph Co. v. Moore, 76 Tex. 67, 12 S. W. Rep. 949; Telegraph Co. v. Edsall, 74 Tex. 333, 12 S. W. Rep. 41; Telegraph Co. v. Feegles, 75 Tex. 537, 12 S. W. Rep. 860; Potts v. Telegraph Co., 82 Tex. 545, 18 S. W. Rep. 604; Telegraph Co. v. Ward, (Tex. App.) 19 S. W. Rep. 898; Telegraph Co. v. Rosentreter, 80 Tex. 406, 16 S. W. Rep. 29; Telegraph Co. v. Cooper, 71 Tex. 507, 9 S. W. Rep. 598; Hays v. Railroad Co., 46 Tex. 279; So Relle v. Telegraph Co., 55 Tex. 310; Telegraph Co., v. Carter, (Tex. Civ. App.) 21 S. W. Rep. 689; Hale v. Bonner, 82 Tex. 33, 17 S. W. Rep. 605; Telegraph Co. v. Richardson, 79 Tex. 649, 15 S. W. Rep. 689.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge, (after stating the facts as above.) The right of the defendant in error, plaintiff in the court below, to recover damages in this action must be based upon the contract entered into with the Western Union Telegraph Company to transmit and deliver the message in question; and this whether the action is one technically for damages for breach of contract, or is an action sounding in tort. The facts, as narrated in the first original amended petition, show that one G. W. Wood, a brother of defendant in error, residing in Jefferson, Marion county, Tex., became very ill, and desiring the presence of the defendant in error, to comfort him in his last illness, and to settle important business matters, procured a telegram to be sent to his son, John A. Wood, who resided in McGregor, McLennan county, Tex., therein requesting the presence of his said son, and requesting said son to notify his brother, defendant in error, of his said illness. John A. Wood thereupon delivered to the agent of the telegraph company, for transmission and delivery, the following message: "To A. Wood, Gatesville, Texas. Received telegram. Pa is very low. Asked to wire you. [Signed] John A. Wood." The person referred to as "Pa," in said telegram, was the said G. W. Wood. At the time the said message was delivered to the telegraph company's agent for transmission and delivery, the price demanded for sending the same was paid by said John A. Wood. It is not shown that the defendant in error was a party to, or privy to, the contract thus entered into, nor does it even appear that the contract was entered into for the benefit of the defendant in error. On the contrary, so far as the telegraph company had notice, it was for the benefit of G. W. Wood. We notice in the petition the statement, "the said John A. Wood, in re-

sponse to his father's telegram, and as the agent and acting for plaintiff, delivered to the agent of defendant," etc., but we consider all that is said with reference to John A. Wood's being the agent and acting for the defendant in error as a statement of a conclusion of law, rather than of fact, and as entirely refuted by the detailed facts set forth in the petition itself. The action being founded upon a contract, the elementary rule is that no one can sue for damages thereon who is not a party to the contract.

"This rule is often expressed in the maxim that no one can sue on a contract 'who is a stranger to the contract, or who is not privy to it.' In whatever words expressed, it embodies the principle that 'Rights founded on contract belong to the person who has stipulated for them,' and no other, and, therefore, that no one can sue for the nonperformance of an agreement to which he was not, either directly or through his agent, a party. * * * It is, in short, 'clear that an action of contract cannot be maintained by a person who is not a party to the contract; and the same principle extends to an action of tort arising out of the contract.' No one, therefore, can bring an action for a breach of contract merely because he thereby suffers loss or damage, since a person may be damaged by the breach of a contract to which he is not a party, and under which, therefore, he has no rights. The loss he suffers, in so far, of course, as it arises merely from the breach of the contract, is damnum absque injuria, and affords no cause of action." Dicey, Parties, marg. pp. 77, 79; 3 Bouv. Inst. p. 134.

We can see no reason why suits brought on contract for the transmission of messages by telegraph, and where the damages claimed are wholly based on nonfeasance, should be excepted from the general rule. There seems to be still less reason to make an exception where the case further shows that the damages claimed for nonfeasance are unaccompanied by injury to the person or purse.

In Playford v. Telegraph Co., L. R. 4 Q. B. 706, where the plaintiff sued for damages for the erroneous transmission of a message by telegraph, sent to him by merchants from whom he had asked an offer for ice, it was held that the defendant's liability arose only from contract. As Sir Robert Lush, delivering the opinion of the court, said:

"The only question, therefore, is, with whom was the contract made? and to this there can be but one answer: It was made with Messrs. Rice & Hellyer. The offer was sent by them on their own behalf, and in their own interest. In so doing they acted, it is true, on the invitation of the plaintiff, but not as his agents, or as representing him. * * * It follows that the plaintiff, who is a stranger to the contract with the company, cannot maintain an action against them for the breach of it."

In the case of Railway Co. v. Levy, 59 Tex. 563, a father sued a railway company, which owned and operated a telegraph line, for negligence in failing to transmit a message sent to him by his son, informing him of the sudden death of the son's wife and child. It was held that the contract between the son and the company could not be made a basis of recovery by the father. In delivering the opinion of the court. Mr. Justice Stayton said:

"The English cases hold, substantially, that a person to whom a message is sent cannot maintain an action, notwithstanding pecuniary injury may result to him by the failure of a telegraph company correctly, or within a reasonable time, to transmit it, unless the sender sustains to the person to whom the message is sent the relation of agent, through which privity of

contract is established. Playford v. Telegraph Co., L. R. 4 Q. B. 706. This doctrine has not been accepted by the courts of this country, but none of them have gone to the extent of holding that the person to whom the message is sent may maintain an action for the negligence of a telegraph company in transmitting, without averment and proof of some actual pecuniary injury sustained thereby."

In Elliott v. Telegraph Co., 75 Tex. 18, 12 S. W. Rep. 954, the plaintiffs were operating a sawmill, and, having broken their saw, one of the firm went to a neighboring village, and engaged Stewart, a member of the mercantile firm, to telegraph to St. Louis to parties to ship at once another saw for use in the mill. A dispatch was prepared, but was handed to a traveling agent of the hardware firm to whom it was addressed. The agent did not send the dispatch, but sent another, in terms, "Express Galloway and Stewart one Disston circular ripsaw, fifty-six inches, terms regular," signing it himself. It was not made known to the agent of the telegraph company that the order was in behalf of plaintiffs, and the court held that no recovery could be had by plaintiffs against the telegraph company for damages for want of the saw, or for the failure to deliver the dispatch. In delivering the opinion of the court, Mr. Justice Gaines said:

"It appears that, in delivering the dispatch written by himself, McAllen was not acting under the authority given him by Stewart, which was to cause to be transmitted the message written by the latter. Being the agent of the company who was addressed, he probably deemed it best to make the order himself. * * * At all events, he was not authorized to send that dispatch for Stewart, and it was not, therefore, the dispatch of plaintiff, though intended for his benefit. In the case of Telegraph Co. v. Broesche, 72 Tex. 654, 10 S. W. Rep. 734, the person who delivered the message for transmission was authorized to do so by the plaintiff, who was immediately present when it was delivered. The damages claimed were for the losses accruing by reason of plaintiff's mill lying idle for want of the saw. The face of the message did not advise the defendant that it was intended for the benefit of plaintiffs, or that such persons existed, and there was no evidence that defendant's agent knew the fact that the mill was idle for want of the saw. Therefore, plaintiffs could not have recovered damages for the lose resulting from this source. If they had proved that the message written by Stewart was delivered to the agent, they could, under the evidence, have recovered only the money paid for its transmission."

Again, in Telegraph Co. v. Young, 77 Tex. 245, 13 S. W. Rep. 985, it was held that "the liability of a telegraph company regarding the delivery of a message must be determined by the character of its contract."

We have examined the Texas cases cited by the appellee, where the person to whom a telegraphic message was directed has been permitted to maintain an action for the recovery of damages against a telegraph company for negligence in the transmission or delivery of the message; but we do not find in any of them that the Case of Levy, 59 Tex. 563, has been overruled, or even doubted, but that in each case, in the opinion of the court, the circumstances showed the party suing had either himself procured the sending of the message, and, therefore, was privy to the contract, or was, to the knowledge of the telegraph company, the party for whose benefit the message was intended.

In the present case, as we have seen, the plaintiff himself neither procured the dispatch to be sent, paid the consideration, nor was the telegraph company informed, either in terms, or by the tenor of the dispatch, that it was for his benefit, but was informed, so far as the message itself read, that it was sent at the request, and for the benefit, of another party. In our opinion the general exception and demurrer to the first amended original petition should have been sustained. Besides demurring generally, the defendant in the court below, plaintiff in error here, specially excepted and demurred to so much of the first amended original petition as sets forth a right to recover damages for alleged mental suffering and distress, upon the ground that such damages are remote, uncertain, and not within the contemplation of the parties at the time, and not an element of actual damages in the case, and, under the allegations of the petition, are not recoverable. The overruling of this special demurrer is assigned as error, and it presents the question which has been mainly considered in the argument of this case.

Defendant in error contends "that mental anguish, unaccompanied by injury to person or purse, is actual damage, and may be recovered as such." He supports his contention with a line of decisions rendered in the supreme court of the state of Texas, with decisions of the supreme courts of Kentucky, Tennessee, Alabama, North Carolina, Indiana, generally following the Texas decisions, and with quotations as to the law on the subject from several text writers of reputation. Telegraph Co. v. Adams, 75 Tex. 536, 12 S. W. Rep. 857; Anderson v. Telegraph Co., (Tex. Sup.) 19 S. W. Rep. 285; Martin v. Telegraph Co., (Tex. Civ. App.) 20 S. W. Rep. 861; Telegraph Co. v. Longwill, (N. M.) 21 Pac. Rep. 339; Telegraph Co. v. Allen, 66 Miss. 549, 6 South. Rep. 461; Telegraph Co. v. Dubois, 128 Ill. 248, 21 N. E. Rep. 4; Young v. Telegraph Co., 107 N. C. 370, 11 S. E. Rep. 1044: Chapman v. Telegraph Co., (Ky.) 13 S. W. Rep. 880; Wadsworth v. Telegraph Co., 86 Tenn. 695, 8 S. W. Rep. 574; Telegraph Co. v. Dryburg, 35 Pa. St. 298; Reese v. Telegraph Co., 123 Ind. 294, 24 N. E. Rep. 163; Shear. & R. Neg. § 560; Gray, Com. Tel. 65 et seq.; Thomp. Elect. § 424 et seq.; 3 Suth. Dam. 314; 2 Thomp. Neg. 847, § 11; 5 Lawson, Rights, Rem. & Pr. § 1972; Telegraph Co. v. Beringer, 84 Tex. 38, 19 S. W. Rep. 336; Telegraph Co. v. Jones, 81 Tex. 271, 16 S. W. Rep. 1006; Telegraph Co. v. Moore, 76 Tex. 67, 12 S. W. Rep. 949; Telegraph Co. v. Edsall, 74 Tex. 333, 12 S. W. Rep. 41; Telegraph Co. v. Feegles, 75 Tex. 537, 12 S. W. Rep. 860; Potts v. Telegraph Co., 82 Tex. 545, 18 S. W. Rep. 604; Telegraph Co. v. Ward, (Tex. App.) 19 S. W. Rep. 898; Telegraph Co. v. Rosentreter, 80 Tex. 406, 16 S. W. Rep. 29; Telegraph Co. v. Nations, 82 Tex. 89, 18 S. W. Rep. 709.

A careful reading of the cases cited will show that, in the main, they do not declare the general proposition applicable to all cases, that mental anguish resulting from the breach of a contract, or even from the neglect of a duty, unaccompanied with actual injury to the person or purse, will support an action for damages; but they rather make an exception as against corporations and quasi public agencies,

which, from the character of their business as common carriers, or in the nature thereof, and from the public privileges enjoyed, are said to be charged with a public duty, as well as obligated to particular individuals under special contracts. The logic seems to be that, as they are charged with duties to the public, they may be held liable for mental anguish, unaccompanied with other injury, resulting from the breach of the contract; and this, not exactly as punitive damages or smart money, but rather as a case where damages should be allowed to the aggrieved individual in order to impress upon the defendant the great importance of faithfully performing his duty to the public. We do not refer to this for the purpose of criticising the argument, but rather to suggest that telegraph companies, and other quasi public agencies referred to, are engaged in commerce, (W. U. Tel. Co. v. Texas, 105 U. S. 460;) that their rights, duties, and obligations under contracts in the line of their business are matters arising under the general law; and that in the courts of the United States the questions arising thereunder, in the absence of controlling statutes, are not controlled by the decisions of the courts of last resort of any particular state in reference to like matters, although the cause of action originated in said state, (Railway Co. v. Prentice, 147 U. S. 105, 13 Sup. Ct. Rep. 261; Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914, recently decided, not yet officially reported.)

The general rule that mental anguish and suffering, unattended by any injury to the person, resulting from simple actionable negligence, cannot be sufficient basis for an action for the recovery of damages, is maintained and supported by an unbroken line of English authorities, by the conceded state of the general law prior to the So Relle Case, 55 Tex. 308, (in 1881,) and by the uniform decision of the federal courts, and decisions of the supreme courts of Nevada, Dakota, Kansas, Maine, Mississippi, Georgia, Massachusetts, and by the opinions of several text writers of unquestioned standing as expounders of the law. Lynch v. Knight, 9 H. L. Cas. 577; Flemington v. Smithers, 2 Car. & P. 292; Railway Co. v. Coultas, 13 App. Cas. 222; Johnson v. Wells, 6 Nev. 224; Russell v. Telegraph Co., 3 Dak. 315, 19 N. W. Rep. 408; Salina v. Trosper, 27 Kan. 564; West v. Telegraph Co., 39 Kan. 95, 17 Pac. Rep. 807; Wyman v. Leavitt, 71 Me. 227; Telegraph Co. v. Rogers, (Miss.) 9 South. Rep. 823; Chase v. Telegraph Co., 44 Fed. Rep. 554; Crawson v. Telegraph Co., 47 Fed. Rep. 544; Chapman v. Telegraph Co., (Ga.) 15 S. E. Rep. 901; Canning v. Williamstown, 1 Cush. 451; Wilcox v. Railroad Co., 52 Fed. Rep. 264, 3 C. C. A. 73; Tyler v. Telegraph Co., 54 Fed. Rep. 634; Wood's Mayne, Dam. p. 74, note; Wood, Ry. Law, p. 1238; 5 Amer. & Eng. Enc. Law, p. 42, note 2; Pierce, R. R. 302; Railroad Co. v. Stables, 62 Ill. 320; City of Chicago v. McLean, 133 Ill. 148, 24 N. E. Rep. 527; Trigg v. Railroad Co., 74 Mo. 147; Walsh v. Railroad Co., 42 Wis. 23. See, also, Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. Rep. 696; Terwilliger v. Wands, 17 N. Y. 54; Railroad Co. v. Packer, 9 Bush, 455; Joch v. Dunkwardt, 85 Ill. 331; Paine v. Railroad Co., 45

Iowa, 570; Railroad Co. v. Stevens, 9 Heisk. 12; Mulford v. Clewell, 21 Ohio St. 191; Freese v. Tripp, 70 Ill. 497; Clinton v. Laning, 61 Mich. 355, 28 N. W. Rep. 125; Meidel v. Anthis, 71 Ill. 241; Masters v. Warren, 27 Conn. 293; Stewart v. Ripon, 38 Wis. 584.

We have carefully considered the question presented, having been aided by able counsel orally and with elaborate briefs, and our conclusion is that upon principle, and the weight of authority, damages cannot be recovered from a telegraph company for mental anguish resulting from simple negligence in the prompt delivery of a telegraphic message, as the same are too uncertain, remote, and speculative.

In the case of Wadsworth v. Telegraph Co., supra, Judge Lurton, dissenting, said:

"The reason why an independent action for such injuries cannot and ought not to be sustained is found in the remoteness of such damages. * * * Such injuries are generally more sentimental than substantial, depending largely upon physical and nervous condition. The suffering of one under precisely the same circumstances would be no test of the suffering of another. Vague and shadowy, there is no possible standard by which such an injury can be justly compensated, or even approximately measured. Easily simulated, and impossible to disprove, it falls within all of the objections to speculative damages, which are universally excluded because of their uncertain character. That damages so imaginary, so metaphysical, so sentimental, shall be ascertained and assessed by a jury with justness, not by way of punishment to the defendant, but as mere compensation to the plaintiff, is not to be expected. That the grief natural to the death of a loved relative shall be separated from the added grief and anguish resulting from delayed information of such mortal illness or death, and compensation given for the latter only, is the task imposed by the law, as determined by the majority. But the rule in question has not been limited, as claimed, to actions based upon physical pain. It has, as we have already seen, upon the authority of Mr. Wood, been applied to actions of slander and libel. No matter how gross the insult, or how harrowing to the feelings, there can be no recovery if the slander did not imply a crime, or result in some special damage. The same rule applies in actions brought for the death of another. The plaintiff must have a pecuniary interest in such life; and in such cases there can be no recovery for the injured feelings, the grief, or anguish suffered by the plaintiff, in consequence of the death for which the suit lies. This is the rule, regardless of the relation the deceased bore to the plaintiff. Whether husband or wife, or parent or child, the rule is the same. The damages are for the pecuniary loss sustained. * * * The principles upon which this suit is maintained seem to me so radical a departure from the headlands of the law, and to so seriously threaten the uprooting of doctrines that I have been taught to revere as the very foundation stones of the system of our law, upon the subject of contracts and damages, as to make it my duty to give expression to my views upon the questions involved."

In the well-considered case of Telegraph Co. v. Rogers, supra, Mr. Justice Cooper, after ably reviewing the adjudged cases, said, for the supreme court of Mississippi:

"We are not disposed to depart from what we consider the old and settled principles of law, nor to follow the few courts in which the new rule has been announced. The difficulty of applying any measure of damages for bodily injury is universally recognized and commented on by the courts. But in that class of cases demands for simulated or imaginary injuries are far less likely to be made than will be those in suits for mental pain alone. No one but the plaintiff can know whether he really suffers any mental disturbance, and its extent and severity must depend upon his own mental peculiarity. In the nature of things, money can neither palliate nor compensate the injury he has

sustained. 'Mental pain and anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone.' Lynch v. Knight, 9 H. L. Cas. 577. The rapid multiplication of cases of this character in the state of Texas since the Case of So Relle indicates to some extent the field of speculative litigation opened up by that decision. The course of decision shows how difficult the subject is of control. In So Relle's Case it was held that the sendee of the undelivered message, who had paid nothing for its transmission, might recover for the mental suffering flowing from its nondelivery. In Railroad Co. v. Levy, 59 Tex. 564, that case was overruled in so far as the right of action was recognized in the sendee, and it was held that only the person entering into the contract with the company might sue. But in Telegraph Co. v. Cooper, 71 Tex. 507, 9 S. W. Rep. 593, where the husband had sent the dispatch calling a physician to attend his wife in her confinement, it was held that the husband (the sender of the message) could not recover for his mental sufferings, caused by the negligence of the company in failing to deliver the message, but that, suing in right of his wife, (who was not a party to the contract with the company,) he might recover for her mental suffering. It is held in that state that the telegraph company must be informed, either by the face of the message, or by extraneous notice, of the relationship of the parties, and the purport of the message, to warrant the recovery of damages for mental suffering. It has been decided that this dispatch did not sufficiently indicate these facts: 'Willie died yesterday at six o'clock. Will be buried at Marshall Sunday evening.' (Telegraph Co. v. Brown, 71 Tex. 723, 10 S. W. Rep. 323,) while the following one did: 'Billie is very low. Come at once,' (Telegraph Co. v. Moore, 76 Tex. 66, 12 S. W. Rep. 949.) And a distinction seems to be drawn between the negligence of failing to deliver a dispatch which causes mental pain and suffering, and failing to deliver one which, if delivered, would relieve such suffering. In Rowell v. Telegraph Co., 75 Tex. 26, 12 S. W. Rep. 534, the plaintiff and his wife had received information of the dangerous illness of her mother. Subsequently, a dispatch was sent, containing information of the mother's improved condition. This dispatch the company failed to deliver. Suit was brought, but recovery was denied, the court saying: 'The demurrer was properly sustained. The damage here complained of was the mere continued anxiety caused by the failure promptly to deliver the message. Some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of contract, in most cases. But the cases are rare in which such emotion can be held to be an element of the damages resulting from the breach. For injury to feelings, in such cases, the courts cannot give redress. Any other rule would result in intolerable litigation.' The manifest effect of this decision is to deny to a party injured redress for mental suffering contemplated by the parties to the contract as the probable consequence of its breach. The distinction drawn by the court is so unsubstantial that it was evidently resorted to for the purpose of obstructing the tide of 'intolerable litigation' flowing from the decisions following the So Relle Case. Kentucky, Tennessee, Indiana, and Alabama have but recently established the rule, the dangers and difficulties of which are becoming apparent in Texas. The 'intolerable litigation' invited and appearing in Texas has not yet fairly commenced in those states. It will, however, appear in due time, and the courts will be forced to resort to refined limitations, as Texas has done, to restrict it. We prefer the safety afforded by the conservation of the old law, as we understand it to be, and are of the opinion that no recovery for mental suffering can be had, under the circumstances of this case."

With the reasoning and conclusions of these two eminent judges, we fully concur. The judgment of the circuit court should therefore be reversed, and the case remanded, with instructions to enter judgment for the defendant, sustaining the general demurrer and the first special demurrer to the plaintiff's first amended original petition, and dismissing plaintiff's suit, with costs, and it is so ordered.