WESTERN UNION TELEGRAPH CO. v. HARRIS.

(Court of Civil Appeals of Texas. Oct. 22, 1910. Rehearing Denied Dec. 10, 1910.)

1. TELEGRAPHS AND TELEPHONES (§ 38*)—DELIVERY OF MESSAGES—DELAY—NATURE OF MESSAGE—RELATIONSHIP TO SENDEE.

A telegram reading: "May Harris, * * * Johnnie burned, very bad, come at once. Signed J. W. Harris"—put the telegraph company on notice that death might probably result from the injury referred to therein, and of the existence of relationship between the sendee and the person injured, and of the fact that the former would probably desire to attend the burial of the person injured, in the event of his death.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

2. TELEGRAPHS AND TELEPHONES (§ 65*)—DELIVERY OF MESSAGE—DELAY—PLEADING.

A petition in an action against a telegraph company for damages for delay in delivering a telegram, preventing plaintiff from attending her brother's funeral, etc., and for mental anguish sustained from her inability to be with him before his death, alleged that the brother died the night of April 3d, and was buried April 5th, and that if the telegram had been promptly delivered, plaintiff would have reached home on April 4th, in time to attend the funeral. A special exception was taken to the petition on the ground that it did not appear therefrom that the injury for which recovery was sought was the proximate result of the negligence alleged. Held, that the exception was, in effect, a general demurrer to the petition and was properly overruled, since to have sustained it would have denied recovery for plaintiff's failure to reach home in time to attend the funeral, for which plaintiff was entitled to recover under the petition, as well as for the other damages claimed.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54, 55; Dec. Dig. § 65.*]

3. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—OVERRULING DEMURRER.

There being no evidence to sustain the allegations of the petition relating to damages for plaintiff's failure to be with her brother before his death, and that issue not having

been submitted to the jury, it was improbable that the jury were influenced thereby, so as to injure defendant, even if the special exception was improperly overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4098; Dec. Dig. § 1040.*]

4. TELEGRAPHS AND TELEPHONES (§ 38*)—DELAY IN DELIVERY—EXCUSES.

A telegraph company's failure to deliver a telegram promptly could not be excused on the ground that the sendee resided beyond its free delivery limits, where no demand was made of its agent at the sending and receiving offices for the payment or guaranty of payment of extra charges for delivery.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

5. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSIONS.

In an action against a telegraph company for damages for delay in delivering a telegram, preventing plaintiff from attending her brother's funeral, at another point, plaintiff was properly allowed to testify as to the time the train left the receiving station on the evening she would have started home, if the telegram had been promptly delivered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

6. TELEGRAPHS AND TELEPHONES (§ 66*)—DELAY IN DELIVERY — ACTIONS — SUFFICIENCY OF EVIDENCE.

In an action for damages from delay in delivering a telegram preventing plaintiff from going home to attend her brother's funeral, the competent testimony *held* to show the time when the train departed, which plaintiff could have taken on the day she would have gone home had the telegram been promptly delivered.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 66.*]

7. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR — ADMISSION OF EVIDENCE — FACTS OTHERWISE ESTABLISHED.

In an action for damages from delay in delivering a telegram, preventing plaintiff from attending her brother's funeral, any error in permitting testimony by plaintiff as to the connections and time of leaving of a train she would have taken for home had she received the telegram promptly, on the ground that she had no personal knowledge of such facts, was harmless, where other competent and uncontroverted evidence established such facts, as testified to by plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

8. EVIDENCE (§ 69*)—PRESUMPTIONS—ORDERLY CONDUCT OF BUSINESS—OPERATION OF RAILROAD.

Where train schedules were proven, it is presumed, in absence of contrary evidence, that trains were operated in compliance therewith.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 90; Dec. Dig. § 69.*]

9. TELEGRAPHS AND TELEPHONES (§ 74*)—MESSAGES — DELAY IN DELIVERY—ACTION—INSTRUCTION—BURDEN OF PROOF—REQUEST.

Where, in an action against a telegraph company for damages from delay in delivering a telegram, preventing plaintiff from attending her brother's funeral, defendant did not introduce any evidence to rebut plaintiff's prima facie case, an instruction that the burden was upon plaintiff to establish her right to recover by a preponderance of the evidence, and that if she had failed to do so, the jury should find for defendant, was sufficient, so that the court

properly refused a requested charge for defendant, that plaintiff could not recover unless the jury found that she would have arrived home earlier than she did arrive, if the message had been promptly delivered, even if the words, "earlier than she did arrive," were properly used instead of, "in time to have attended the funeral."

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

10. TELEGRAPHS AND TELEPHONES (§ 66*)—MESSAGES—DELAY IN DELIVERY—ACTION—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action against a telegraph company for damages for delay in delivering a telegram, preventing plaintiff from attending her brother's funeral, evidence *held* to sustain a finding of negligent delay in delivering the telegram after it reached the receiving station.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. § 66.*]

11. TELEGRAPHS AND TELEPHONES (§ 66*)—MESSAGES—DELAY IN DELIVERY—ACTION—SUFFICIENCY OF EVIDENCE—DAMAGE.

In an action against a telegraph company for damages for delay in delivering a message, preventing plaintiff from attending her brother's funeral, evidence *held* to sustain a finding that defendant's negligent delay in delivery at the receiving point prevented plaintiff from attending her brother's funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. § 66.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by May Harris against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Jno. W. Veale, N. L. Lindsley, and Geo. H. Fearons, for appellant. Jno. A. Pace and Tatum & Tatum, for appellee.

DUNKLIN, J. The Western Union Telegraph Company has appealed from a judgment rendered against it in favor of May Harris in the sum of $750, for an alleged failure to properly deliver a message. Plaintiff's home was with her father near Texline, Tex., but the telegram, which was the basis of the suit, was from her father and was delivered to defendant's agent at Texline, to be transmitted and delivered to plaintiff at Cordell, Okl., where plaintiff was attending school. The telegram read: "4/3/1908. May Harris, c/o Cordell College, Cordell, Okla. Johnnie burned very bad come at once. Signed J. W. Harris." It was deposited in defendant's office at Texline at 4:30 o'clock p. m. on April 3d, and the charge of 50 cents for transmission was paid to the agent at Texline at the time he received it. "Johnnie," mentioned in the telegram, was plaintiff's brother. At the time the telegram was sent he had been burned, and from the injuries resulting therefrom he died during the night of April 3, 1908. The telegram was received by the defendant's operator at Cordell at 5:53

---

o'clock p. m. on April 3d, and plaintiff received it through the United States mail at noon on the following day. In her petition plaintiff alleged that had the telegram been delivered within a reasonable time after it reached defendant's office in Cordell, she could and would have left Cordell on the evening of April 3d, and could and would have reached her home on the evening of April 4th, and would have attended the burial of her brother, which occurred on April 5th, and she sued to recover damages for mental distress occasioned by reason of her failure so to do.

There was no merit in the contention presented by special exception to the petition, that the damages claimed by plaintiff were not such as might have been foreseen as the probable result of a breach of defendant's contract to transmit and deliver the message. The language used in the telegram was sufficient to put defendant on notice, not only that death might probably result from the injury so announced, but also of the relationship existing between plaintiff and the one injured, and of the fact that plaintiff would probably desire to attend the burial of her brother, in the event of his death from the injury. W. U. Tel. Co. v. Linn, 87 Tex. 11, 26 S. W. 490, 47 Am. St. Rep. 58; W. U. Tel. Co. v. Moore, 76 Tex. 66, 12 S. W. 949, 18 Am. St. Rep. 25; W. U. Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920.

In her petition plaintiff alleges, in substance, that her brother died the night of April 3d, was buried April 5th, and that if the message had been delivered to her promptly, she would have left Cordell on the evening of April 3d, and would have reached her home on April 4th, in time to have attended his burial, and yet claimed damages as a result of her failure to be with her brother before his death, as well as for her failure to view his remains and attend his burial.

Appellant complains of the action of the trial court in overruling its fifth special exception reading as follows: "It does not appear from the averments in said petition that the injury alleged, and for which a recovery is sought, was or is the proximate result of the negligence alleged." Under the assignment complaining of this ruling, appellant insists that the court should have excluded the allegations of damage as a result of plaintiff's failure to see her brother before his death. The exception was in effect a general demurrer. If it had been sustained, plaintiff would have been denied the right to recover for her failure to reach her home in time to view her brother's remains and attend his burial, as well as the other damages alleged, and for this reason, if for no other, there was no error in overruling the exception. Besides, as there was no evidence to sustain the allegations to which the assignment now under discussion relates, and as the court did not submit the issue to the jury, it is improbable that the jury were in any manner influenced thereby, to appellant's injury.

Defendant pleaded specially that the town of Cordell was a small town of about 2,000 population; that defendant had established a rule to deliver messages received by it at its office in that town free of extra charge for delivery within a radius of one-half mile from said office, and to require payment of extra compensation for delivery of messages beyond such free delivery limits, and that plaintiff lived beyond the free delivery limits so established. It further alleged that the regulation so established by it was reasonable, and that as a part of its contract to transmit and deliver the message, it was understood and agreed by and between defendant and the sender of the message at the time the telegram was deposited in the office at Texline that defendant had established at Cordell reasonable free delivery limits, beyond which an extra charge would be made for delivery of the message over and above the fee paid by the sender; that no such extra fee was paid nor guaranteed by the sender, although the sender at the time he delivered the message to defendant at Texline knew, while defendant did not know, that the addressee lived beyond the free delivery limits established by defendant at Cordell. But there was no allegation in this plea that the contract provided that such extra charge should be prepaid by the sender. Plaintiff excepted to this plea on the ground that defendant failed to allege any demand by its agent at Texline, or by its agent at Cordell, for the payment or guaranty of such extra charge. This exception was sustained by the trial court, and appellant challenges the correctness of that ruling. The ruling is supported by the decision of our Court of Civil Appeals for the Fourth district in the case of W. U. Tel. Co. v. Ayres, 47 Tex. Civ. App. 557, 105 S. W. 1166, in which a writ of error was denied by our Supreme Court, and we overrule appellant's contention.

After receiving the message, plaintiff left Cordell on the evening of April 4th and arrived at her home on the evening of April 5th, after the burial of her brother. She traveled to Vernon on the Frisco Railway and from Vernon to Texline on the Fort Worth & Denver City Railway. The evidence showed beyond controversy that the telegram was received at defendant's office at Cordell at 5:53 o'clock p. m. on April 3d, and that plaintiff was in attendance at Cordell Christian College on that day, and that the college was situated one mile, lacking one block, from defendant's office in Cordell; that Cordell Christian College was the only college in the town of Cordell; that there was a telephone line from defendant's office to the college, and that the Frisco train left Cordell for Vernon after 6:10 o'clock on.

the evening of April 3d. Interpreting the verdict in the light of the court's charge, it is evident that the jury found that by the exercise of ordinary ' diligence defendant's agent at Cordell could have delivered the message in time for plaintiff to take the train for her home on the evening of April 3d, and that but for defendant's failure so to do, plaintiff would have left on that train and would have reached her home before the burial of her brother. There was no error in permitting plaintiff to testify as to the time of departure of the train from Cordell. She testified positively that it left after 6:10 o'clock on the evening of April 3d, and there is nothing in the record to show that this testimony was the statement of a mere conclusion from other facts, as appellant insists. Plaintiff testified, substantially, that if the message had been delivered to her promptly after its receipt by defendant's agent at Cordell, she would have left on the Frisco train the evening of April 3d; that she would have reached Vernon on that train at about 10 o'clock the same evening; that she would have left Vernon on the Fort Worth & Denver City train at about 4 o'clock on the morning of April 4th, and would have reached her home during the evening of that day. Defendant objected to this testimony on the ground· that the same was based on train connections at Vernon and train schedules of which the witness had no personal knowledge, and the rulings of the court in admitting the testimony are made the bases of appellant's eighth and ninth assignments of error. In answer to questions propounded by defendant's counsel on cross-examination plaintiff further testified as follows: "I know the train got into Vernon on the night of the 3d over the Fort Worth & Denver road, and that it got into Texline, because my sister was on the train. I know this because she told me so, but I do not know it of my own knowledge. I do not know whether the last train before the one I took arrived at Vernon, and I do not know whether it connected with the Denver or not. I know that other parties went to Texline on the train before the one I took got there. I know it, because they were there when I got there. I did not see them go, nor did I see them arrive at Texline."

A. W. Thompson, witness for defendant, who was defendant's telegraph operator at Texline and who forwarded the message to Cordell, testified: "I know the time the Denver train reached Texline on the evening of April 4, 1908; I think it was on time. I think it was on time on the evening of the 5th, 1908. The time of its arrival at Texline was 6:45. That was the train coming from Fort Worth by Vernon, Amarillo, Channing, Duncan, and Texline. * * * A regular, scheduled train does not run ahead of time."

Plaintiff testified that she arrived at Vernon at 12 o'clock, midnight, on the Frisco train and left Vernon at 4 o'clock in the morning on the Fort Worth & Denver train. Defendant introduced no evidence to show that plaintiff could not have reached Texline on April 4th by leaving Cordell on the Frisco train on the evening of April 3d. The testimony of plaintiff elicited on cross-examination by defendant, as shown above, the testimony of the witness Thompson, already quoted, and the testimony of plaintiff as to train connections made on her trip to Texline after receipt of the message, were uncontroverted and were sufficient to establish the facts sought to be established by the testimony, to which objection was made, and for that reason we think the error, if any, in overruling the objection was rendered harmless. If it be true that a regular train does not run ahead of time, then the Frisco train was scheduled to arrive at Vernon either at 12 o'clock at night or at some earlier hour, and the Denver train was scheduled to leave Vernon for Texline at some hour not earlier than 4 o'clock in the morning. These schedules being proven, the presumption arises, in the absence of proof to the contrary, that those trains were run in compliance therewith.

Complaint is made of the refusal of the court to give to the jury a special instruction requested by defendant, in effect, that plaintiff could not recover unless they should find that, if the message had been promptly delivered, she would have arrived in Texline "earlier than she did arrive."

The trial court instructed the jury as follows: "The burden of proof is upon the plaintiff to establish her right to recover in this cause by a preponderance of the evidence, and if she has failed to do so, your verdict should be for the defendant."

In view of the failure of defendant to introduce any evidence to rebut the prima facie case made out by positive testimony, we think the charge given was sufficient, and therefore there was no error in refusing the requested instruction, even though it should be held that the use of the language quoted from the requested instruction, "earlier than she did arrive," was sufficient, instead of, "in time to have attended the burial."

We have carefully examined the charge of the court presenting plaintiff's case to the jury, and we find no merit in the criticisms urged by appellant, that the same was upon the weight of the evidence and that it unduly emphasized defendant's duties in the transaction in question. We further hold that the evidence was sufficient to support the finding by the jury that there was negligent delay in delivering the telegram after it reached Cordell, and that but for such delay plaintiff would have been present at her home before the burial of her brother.

The judgment is affirmed.