WESTERN UNION TELEGRAPH CO. v. GOODSON. (No. 279.)

(Court of Civil Appeals of Texas. Beaumont. April 3, 1918.)

1. TELEGRAPHS AND TELEPHONES &⇒56(3) — DELAY IN DELIVERING MESSAGES — CAUSES OF ACTION.

Where telegraph company failed to deliver message notifying plaintiff to have his brother come to wait on their father, plaintiff had no cause of action on the theory that he was personally deprived of the privilege of going to see his sick father.

2. TELEGRAPHS AND TELEPHONES &⇒37(9) — CHARACTER OF MESSAGE—NOTICE.

A telegraph company which received for transmission a message addressed to plaintiff saying, "Send Oscar at once to help wait on his father. Lida sick," was chargeable with notice of the relationship of the parties, the purpose of the message, the necessity of prompt transmission, and of probable injury from delay.

3. TELEGRAPHS AND TELEPHONES &⇒74(1) — DELAY IN DELIVERING MESSAGE—INSTRUCTIONS.

Where words of message and other facts were admitted except the date of its delivery to the telegraph company, the court should have submitted the question whether it was delivered on one day or the other without including in the instruction the words of the message which tended only to confuse.

4. APPEAL AND ERROR &⇒1067—PREJUDICIAL ERROR—INSTRUCTIONS.

In an action for delay in transmission of message, where the only question was the date of its receipt by the telegraph company, error in refusing to submit issue of which day it was received was prejudicial, where the evidence strongly conflicted on such point.

5. TRIAL &⇒267(1) — INSTRUCTIONS — FORM— REQUESTS.

Though requested instructions are correct, the court need not give them verbatim.

Appeal from District Court, Liberty County; L. B. Hightower, Sr., Judge.

Action by W. A. Goodson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed, and remanded for new trial.

F. J. & C. T. Duff, of Beaumont, for appellant, E. B. Pickett, Jr., of Liberty, for appellee.

HIGHTOWER, C. J. Appellee, W. A. Goodson, brought this suit in the district court of Liberty county against appellant, Western Union Telegraph Company, to recover damages for mental pain and anguish alleged to have been suffered by him in consequence of appellant's alleged negligent failure to deliver to him a telegram reading as follows:

"Stockdale, Tex., 12/10/14.
"W. A. Goodson, Phone Moore's Bluff Pumping Station, Dayton, Texas. Send Oscar at once to help wait on his father. Lida sick.
"L. D. Hopkins."

The case was tried with a jury, and was submitted upon special issues, and resulted in a verdict and judgment in favor of appellee for $1,250.

After appellant's motion for new trial was

overruled, notice of appeal was given, and proper bond was duly filed, and the case is now before this court for revision.

This is the second appeal in this case, and the disposition of the case on the first appeal, as made by this court, will be found in 188 S. W. 736. The first appeal was from an order of the trial court sustaining a general demurrer interposed by appellant to appellee's petition, and this court, as will be seen from the report of the case above referred to, reversed the judgment of the trial court, and held that the petition was not subject to general demurrer, and the cause was remanded for a new trial in that court. There seems to be no change made in the petition since the former decision of this court, and the material allegations in the petition are fully shown in the former opinion, and it is therefore unnecessary to again comment at length upon the allegations of the petition.

It is again insisted by appellant on this appeal that the trial court erred in overruling its general demurrer to appellee's petition, and this court is earnestly requested to recede from its former opinion on this point, and to now hold that appellant's general demurrer should be sustained. We have very carefully again considered appellant's contention in this connection, and have again reached the conclusion that appellee's petition stated a cause of action against appellant, and that the trial court was correct in overruling the general demurrer.

On the first appeal, after discussing at some length the authorities cited by counsel for both sides in their briefs, this court reached the conclusion that appellee's petition contained allegations sufficient to authorize a recovery by him for whatever mental pain and anguish he suffered in consequence of being denied the privilege of sending his brother, Oscar, to wait upon his sick father, if such damages were occasioned by negligence on the part of appellant, and that conclusion and holding was sufficient to dispose of the case as then before this court. But at the very conclusion of the former opinion, which will be found at the bottom of page 741, 188 S. W., this court used this language:

"From the authorities above referred to, and the views above expressed, we are of opinion that it was error in the court to sustain a general demurrer to plaintiff's petition, and that the said petition sufficiently stated a cause of action, and we may say that, in our opinion, appellant not only has a cause of action because he himself was deprived of going to his father's bedside and ministering to his wants, but that, in addition, he has a cause of action by virtue of the fact that he was deprived of the opportunity of sending his brother, Oscar, to wait upon their father when such nursing and attention was needed, to which the telegram called upon appellant to supply."

On the trial from which this appeal is taken, the trial court, acting in deference, evidently, to the holding of this court on the

former appeal found in that portion of the opinion just quoted, submitted to the jury for consideration, not only such mental pain and anguish as appellee suffered in consequence of being deprived of the privilege of sending his brother, Oscar, to wait upon and nurse his sick father, but also in the same connection and in one question submitted to the jury for their consideration such mental pain and anguish as appellee suffered in consequence of his being deprived of going in person to wait upon and nurse his sick father, and in response to such charge by the court the jury returned a verdict in favor of appellee for the aggregate sum of $1,250.

It is strenuously insisted by appellant, not only that appellee was not entitled to recover on account of being deprived of the privilege of sending his brother, Oscar, to wait upon his father, but certainly that appellee was not entitled to recover anything against appellant in consequence of his being deprived of the privilege of going in person to see his father and wait upon him.

[1] After very carefully reconsidering this whole case, this court has reached the conclusion that it was in error in holding on the first appeal, as shown by that portion of the opinion above quoted, that appellee's petition showed a cause of action for damages sustained in consequence of his being deprived of the privilege of going in person to see his sick father and wait upon him, and our conclusion now is that appellee was not entitled to recover anything in consequence of his being denied the privilege of going in person to see and wait upon his sick father.

We believe that the opinion of this court on the former appeal mentions, and in most instances discusses at some length, all the authorities cited by counsel that could have any bearing upon this point, and it would serve no useful purpose to again cite and discuss them, and for a clearer understanding of this opinion, reference is made to the former.

[2] We have treated this telegram as being one which upon its face apprised appellee that his father was seriously sick, and we hold that appellant, the telegraph company, was chargeable with notice of the relationship that in fact existed between all parties named in the telegram, and also that appellant was chargeable with notice of the purposes for which this telegram was sent, in so far as such purposes were reasonably to be inferred from the language used in the message, but no further. It is not claimed by appellee that any notice or information of any character whatsoever was given to appellant at the time this telegram was delivered to it for transmission, regarding the object or purposes of sending the same, other than that which is disclosed on the face of the telegram itself. This being true, we hold that the language of this telegram was reasonably sufficient to give notice to appellant of the following facts, and no more:

(1) Of the relationship which existed between all the persons named in this telegram; that is to say that W. A. Goodson, appellee, and "Oscar" named in the telegram, were brothers, and that "Lida," named in the telegram, was the sister of W. A. and Oscar Goodson, and that all of these were the children of their father, who was sick at Stockdale, and who needed nursing, and that L. D. Hopkins, who sent this telegram, was the husband of "Lida" and the brother-in-law of appellee and Oscar Goodson.

(2) That the telegraph company was informed by the language of this message that the purpose of L. D. Hopkins, appellee's brother-in-law, in sending this message was to have appellee send his brother, Oscar, to Stockdale to wait upon their sick father.

(3) That the telegraph company had notice that appellee was seriously interested in having this telegram promptly transmitted and delivered by the company.

(4) The language used in the telegram reasonably indicated to appellant that appellee would probably sustain injury in the event this telegram should not be promptly transmitted and delivered to him, for the reason that he would be denied the privilege of complying with the purpose of the message, by sending his brother, Oscar, to wait upon his sick father.

There was nothing, however, in the language used in this telegram that reasonably indicated to appellant that the purpose of sending this telegram to appellee was to have him to go to his father in person and wait upon him, or that reasonably indicated to appellant that appellee was expected to go in person to his father, or that he would do so, but, on the contrary, the language used reasonably indicated to appellant that appellee was not expected to go to his father in person, and the command was not to bring Oscar or to come with Oscar, but "send Oscar," and we think it would be unreasonable to hold that the purpose of sending this message to appellee was to have him personally attend his father, and that the language of the message negatives any such purpose; and it must be borne in mind that, while appellant was chargeable with notice of the purposes for which this particular message was sent, still it was only chargeable with notice of such purposes as were reasonably to be inferred by appellant from the language used in the message. And, since we are of the opinion that the language employed in this message was not such as to reasonably indicate to appellant that the purpose of sending it was to have appellee to attend upon his father in person, but that, on the contrary, its purpose was to have appellee send his brother, Oscar, to attend their sick father, and since it is undisputed that no information or notice of any character was given appellant as to the purpose of this message, other than that which is disclosed by the message itself, we hold that appellant was not liable for any mental pain or anguish suffered in consequence of his be-

ing deprived of the privilege of personally attending his sick father, whether such deprivation was due to appellant's failure to promptly deliver the message, or not. We think that none of the authorities cited by appellee, when carefully analyzed, are in conflict with the conclusion we have reached on this point, but we shall not again discuss them, because they are all discussed, as before stated, in the former opinion.

It follows from what we have said that the trial court was in error, though induced by our former opinion, in permitting the jury to consider as an element of damages in this case appellee's mental pain and suffering on account of being deprived of the privilege of personally attending and waiting upon his sick father. And since the amount found by the jury in favor of appellee was not itemized, and since it is impossible to tell what portion of the amount allowed was to compensate appellee because of his being deprived of the privilege of personally attending his father, the error in this connection cannot be cured by a remittitur.

There is another assignment of error made by appellant which, after careful consideration, we are of the opinion should be sustained. It became a material issue of fact upon the trial of this case whether the message in question was delivered to appellant at Stockdale in time for appellee to have sent his brother, Oscar, to wait upon his father prior to the father's death. As will be observed from the date on the message, it purports to have been delivered on the 10th day of December, 1914, but it was the contention of appellee that this message was, in fact, delivered to appellant at Stockdale on the 9th day of December, 1914, and that the date expressed on the face of the message was a mistake. It was shown, without dispute, that L. D. Hopkins, appellee's brother-in-law, wrote this message with his own hand, date and all, and it is undisputed that, if the message was not delivered to appellant at Stockdale on the morning of the 9th of December, but was, in fact, delivered to appellant on the 10th, then, even if it had been transmitted and delivered with due diligence, appellee would not have had time to send his brother, Oscar, to his sick father before the father actually died. It is undisputed that the father died between 8 and 9 o'clock in the morning of December 11th. Now, it is assigned by appellant that the trial court erred in refusing to give to the jury a special charge asked by it upon this issue, reading as follows:

"Was the message involved in this suit delivered to the telegraph company at Stockdale on December 9, 1914, or on December 10, 1914? You will answer this question by giving the date."

We find from an examination of the record that this charge was requested by appellant in due time under the rules, and that same was refused by the trial judge, and the judge's action in doing so was properly ex-

cepted to. Now the charge of the court upon this material issue was as follows:

"Question No. 1: Did the defendant, Western Union Telegraph Company, receive at its office in Stockdale, Tex., on the 9th day of December, 1914, a telegram to be sent to plaintiff, W. A. Goodson, addressed to Dayton, Tex., reading as follows:

"'W. A. Goodson, Phone % Irrigating Pumping Station, Dayton, Texas. Send Oscar at once to wait on his father. Lida sick.
                    "'[Signed]    L. D. Hopkins.'
"Answer this question 'Yes' or 'No.'"

This charge was objected to by appellant in proper time by written objections, the objection being substantially that the same was confusing and did not call to the attention of the jury the main issue of fact as to the date of the delivery of this message, but this objection was by the trial court overruled, and the special charge asked by appellant, intended to cure this matter, was refused.

[3] Now, there was no dispute at all as to the fact that the message in question was, in fact, delivered to appellant at Stockdale, in the very words and figures as hereinbefore set out, but the sharp issue as made by the evidence on this point was whether the date of its delivery was the 9th or whether it was the 10th of December, and appellant's entire defense upon that phase of the case was based upon the contention that the date of the delivery of this message was the 10th of December, and there was no occasion whatever for the trial court's submitting to the jury whether a message as set out in the charge given the jury was, in fact, delivered to appellant, and thereby permit the jury to deliberate upon that question, and we think that under the particular facts in this case, and in view of the state of the evidence, as disclosed by this record, the trial court was in error in refusing to give to the jury appellant's special charge, which pointedly and succinctly left to the jury for determination the one question of fact in this connection, which was the date on which this message was actually delivered to appellant. If this special charge had been given, the jury would have seen at a glance that the vital issue submitted to them by the court on this point was the date on which this message was delivered, and not the wording of the message itself, about which there was no contest, and this, we think, appellant was entitled to have submitted to the jury in such way as to confine their attention on that point to this vital issue.

[4] In view of the state of the evidence on this issue of fact, as the same is reflected by the record before us, we have reached the conclusion that this error on the part of the court was not only calculated to injure the appellant, but that such error probably did injure appellant; for, in our opinion, after carefully weighing the evidence on this point, we believe that it preponderates in favor of the contention that this message was not de-

livered to appellant at Stockdale until the 10th day of December, 1914, and for that reason we think that we should not invoke, to save a reversal of this case, rule 62a governing this court (149 S. W. x). Of course, if this special charge had been given or some other charge which clearly and pointedly put this matter to the jury, and the jury had found that the date of delivery of the message was December 9th, we would not disturb the verdict, because in our opinion the jury's finding on that issue had been against a preponderance of the evidence; but that is a different question from the one here under consideration.

[5] It is suggested by appellee that there is nothing in this contention on the part of appellant, and that the only difference in the charge given by the court and that requested by appellant is a mere change of words, etc., and that the court was not bound to use the language employed by appellant in this special charge, but was authorized to use such language as it saw proper, just so the court properly and sufficiently submitted the issue here involved to the jury. We cannot agree with appellee that the only difference between these two charges was a mere change of words, but we do agree that the court was not bound to use the language employed by appellant in submitting this issue, provided it had given to the jury a charge which pointedly and clearly submitted this issue, concerning which there was such a sharp conflict in the evidence. We sustain the assignment on this point, and hold that under the circumstances of this particular case it was reversible error to refuse appellant's special charge above quoted.

All other assignments made by appellant are overruled, and we adhere in all respects to the views of this court as expressed in the former opinion, except in so far as same have been corrected and modified above.

For the errors pointed out, the judgment of the trial court is reversed, and this cause is remanded for a new trial.