WESTERN UNION TELEGRAPH CO. v.
STREETER. (No. 7604.)

(Court of Civil Appeals of Texas. Galveston.
June 25, 1918. Rehearing Denied
Oct. 10, 1918.)

1. TELEGRAPHS AND TELEPHONES &#9902;38(6)—
DEATH MESSAGES—DELAY—NOTICE TO COMPANY.

Company, which failed to deliver message
reading: "Mr. J. S., Mother dead. Come home
at once"—*held* liable to J. V. S., the son, notwithstanding delayed delivery to J. W. S., his
father, at same address, having been put on inquiry by word "mother" and by agent's conversation with sender.

2. TELEGRAPHS AND TELEPHONES &#9902;37(9)—
DEATH MESSAGES—NOTICE TO COMPANY—
CARE REQUIRED.

Where telegraph company received notice
from the face of the message that death message
was for the son, and not the father, it was under the duty of exercising ordinary care to make
delivery to the son.

3. APPEAL AND ERROR &#9902;931(6)—PRESUMPTIONS—INCOMPETENT EVIDENCE.

In action for delay in delivering death message, where there was competent evidence that
plaintiff was the intended addressee, it will be
presumed that the court did not consider the
sender's testimony that he sent the message for
plaintiff, if such testimony was incompetent.

Appeal from District Court, Galveston
County; Clay S. Briggs, Judge.

Action by Joseph V. Streeter, a minor,
by his next friend, Joseph W. Streeter,
against the Western Union Telegraph Company. Judgment, on trial without jury, for
plaintiff, and defendant appeals. Affirmed.

Hume & Hume, of Houston, and Albert T.
Benedict, of New York City, for appellant.
James B. & Charles J. Stubbs, of Galveston,
for appellee.

GRAVES, J. Joseph V. Streeter, a minor
over 19 years of age, by his father, Joseph
W. Streeter, as next friend, sued the Western
Union Telegraph Company for damages for
mental suffering alleged to have been caused
by its negligent delay in the delivery to him
of a telegram from his brother-in-law, Robert Hoke, announcing the death of plaintiff's
mother, in these words:

"Madisonville, Texas, Nov. 12:05 A. M. 23.

"Mr. Joe Streeter, 1927 Ave. G. Gal. Texas.
Mother dead. Come home at once.
    "Robert Hoke.      12:25 A."

"12:25 A" means the message was received
at the telegraph company's office in Galveston 25 minutes after midnight of the same
night, or 20 minutes after being filed at Madisonville for transmission. The year was
1915. The father and son were then living
together in Galveston, and the message was
delivered at 6:45 a. m. on the same day, November 23, 1915, over 6 hours after its receipt at the company's Galveston office, to
the father, who at once apprised his son of
its contents; but it was then too late for
them to reach Madisonville in time to be
present at the funeral, which the proof showed both of them could and would have done,
if they had received the telegram even as
late as 5 o'clock that morning. The court,
trying the case without a jury, rendered
judgment in plaintiff's favor against the telegraph company for $1,000, from which it appeals.

[1] No contention is made, nor could one
successfully be, under the facts developed,
that the delay in delivering the message
after its receipt in Galveston did not constitute negligence upon its part, nor proximately cause the amount of damage recovered
for, but the appellant company, from different approaches and through several assignments, insists that there was no evidence
showing or bringing home notice to it that
the appellee, Joseph V. Streeter, the son, had
any interest in the message, or that mental
anguish to, or the discharge of any duty toward, him was within the contemplation of
the parties at the time the contract of transmission was made; that the undisputed
evidence showed the contract to have been
made for the exclusive benefit and solely in
the interest of "Mr. Joe Streeter," the appellee's father; that the message was accepted by it for transmission to him alone,
without notice of any interest of his son
therein; and that in fact the latter had no
such interest, the father being the real and
only addressee.

While these views are most persuasively
presented, we are unable to accept them,
concluding rather that the trial court was
right in finding the message to have been intended for the son, and in holding appellant
liable in damages to him for its failure
to promptly so deliver it. After carefully
searching the record, we find nothing in the
testimony tending to indicate that the company's agent, who received the message for
transmission, either knew or had any reason
to think it was not intended for the son.
The words "Mother dead" would convey the
impression that it was either the mother of
the sender or of the receiver, and would be
sufficient to put the telegraph company upon
inquiry. Surely no reasonable inference
would arise that it meant the father's mother,
and the mere fact that the boy, 2 months
more than 19 years of age, was referred to
in the written telegram as "Mr. Streeter,"
standing alone, would not, in our opinion,
justify a different conclusion. As stated,
we have found nothing else. Both father
and son were named Joe Streeter; the former's full name being Joseph W., and the
latter's Joseph V. Both had lived up there
until about 1½ months before the date of
the telegram, and were known in Madison
county as Joe Streeter; the father being
generally addressed "Mr. Streeter," and the
son as "Joe," while sometimes this was
changed to "old Joe" and "young Joe," respectively. The sender, Robert Hoke, son-in-law of old Joe and brother-in-law of

young Joe, testified without dispute that he intended the message for the young man. He had written and signed it himself in the same language as delivered upon a piece of ordinary paper, and it got into the hands of Dr. Berry, who took the original to Madisonville and filed it with Mr. Smith, the company's agent there; Dr. Berry's testimony as to what occurred being:

"At the time I delivered the message to Mr. Smith, the telegraph operator, I told him that I had a message from Robert Hoke to be sent to Mr. Streeter at Galveston, announcing the death of Mrs. Streeter, and that it would be a very great accommodation to get it sent that night. When I found the agent, he was in bed at home; that was right at midnight, * * * and it wasn't far from midnight when he sent the message. I think I told him who the message was addressed to. We read it together in the office after we got down there. I think I had read it over when the boys gave it to me, and at least they told me who it was to, and who it was from, and Mr. Smith and I looked it over in the office, and then we sent it over the wire."

It will be noted there is nothing in this statement inconsistent with the theory that the face of the message indicated the son as the addressee. Dr. Berry, who was not acting for the father, as appellant contends, but is, we think, to be regarded as the agent of the sender, Hoke, did not really add a material fact to the terms of the message itself, except that Mrs. Streeter was the one, the mother, who it announced was dead. He did not tell the agent the message was to be sent to Mr. Streeter at Galveston, announcing the death of Mrs. Streeter, his wife, as appellant would now read into the meaning of his testimony. So that, as we view it, the telegraph company thus, through the sender's agent, not only had no extraneous notice that the son was not the intended beneficiary of the contract of transmission, but rather information confirmatory of at least a possible inference from its terms that he was in fact the real party at interest. Telegraph Co. v. Goodson, 202 S. W. 766; Herring v. Telegraph Co., 108 Tex. 77, 185 S. W. 293; Telegraph Co. v. Jones, 81 Tex. 271, 16 S. W. 1006; Telegraph Co. v. Moore, 76 Tex. 66, 12 S. W. 949, 18 Am. St. Rep. 25; Telegraph Co. v. Shaw, 40 Tex. Civ. App. 277, 90 S. W. 58; Telegraph Co. v. Daniels, 152 S. W. 1116. And right here, we think, runs the line of differentiation between the controlling facts of this case and those of the line of cases cited and relied upon by appellant, among them S. W. Tel. & Tel. Co. v. Gotcher, 93 Tex. 114, 53 S. W. 686; W. U. Tel. Co. v. Kerr, 4 Tex. Civ. App. 280, 23 S. W. 565; Pacific Express Co. v. Redman, 60 S. W. 677; W. U. Tel. Co. v. Potts, 120 Tenn. 37, 113 S. W. 789, 19 L. R. A. (N. S.) 479, 127 Am. St. Rep. 991. In each of those cases it plainly appeared that the telegraph company neither had knowledge that the person seeking recovery was a beneficiary, nor was apprised of any circumstances charging it with notice of any such fact.

[2] In the case at bar, however, the telegraph company was chargeable with notice upon the face of the message that it was intended for a Mr. Joe Streeter, which description, while in itself fitting either father or son, when considered together with the further words, "Mother dead," was also reasonably sufficient, we think, under the authorities first above cited, to indicate the son as the intended addressee, and that he had a serious interest in its prompt delivery. In such circumstances, the telegraph company was under the duty of exercising ordinary care to make delivery to him, which the undisputed proof shows it did not do. See, also, for statement of the same principle, Herring v. Telegraph Co., 108 Tex. 77, 185 S. W. 293; Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920. Neither do we think the father's having considered the telegram intended for his own information also, or that in fact it may have been, made any difference.

[3] The sixth assignment complains of the admission of Robert Hoke's testimony that he had sent the telegram here involved to the appellee, Joseph V, Streeter, over objection that it was immaterial, irrelevant, hearsay, and not competent to charge appellant with knowledge of any such intent upon Hoke's part; since the trial was before the court without a jury, there being other competent evidence upon which the judgment could be based, even if this testimony was incompetent, it will be presumed the court did not consider it. Skinner v. Sullivan & Co., 134 S. W. at page 429.

The conclusions stated require the overruling of all assignments and an affirmance of the trial court's judgment, which order has been entered.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes